Sean O'Hanion appearing for Plaintiff Gasparyan. Thank you. This is a case that has multiple errors by the Commissioner. I'll begin with a long-time treating doctor who is a general practitioner, Dr. Chinoyan, who started treating Gasparyan in July of 2001 and is still treating him today. Dr. Chinoyan furnished over 100 pages of treatment records and about a 5-6 page report. He found that the claimant suffered from severe depression. His opinion about the severe depression was substantiated and supported by Dr. Taubenfeld, a psychologist, who treated the claimant on several occasions. Later on, when Dr. Levin of the Los Angeles Mental Health Clinic began treating the claimant, she as well, all three treating doctors, the first doctor is a general practitioner, the second is a psychologist. May I interrupt you just a minute? I'm not clear. It's my understanding that the ALJ focused on a lack of records provided to support the medical analysis and conclusions of your treating physicians, yet no additional records were provided thereafter to the Appeals Council. Is that correct? You're talking about Dr. Levin from the Mental Health Clinic? Well, I'm talking about the lack of records to support the position. Well, the Mental Health Clinic began treating the patient in early 2006, I believe it was, and he was seen there about four or five times. And reports were provided from the clinic by Dr. Levin and other people who worked on her staff. Well, what about Dr. Joannian and Taubenfeld? I'm sorry? Dr. Joannian, I believe it's pronounced, and Taubenfeld, or Taubenfeld? Oh, Taubenfeld treated the claimant on several occasions earlier, and he did psychological testing and gave the results of his psychological testing, which you can compare with the one-time report by the state agency doctor, Dr. Colonna. The fact is that there was – Dr. Genoy, a general practitioner, treated this man five or six years when he appeared for his hearing. Dr. Taubenfeld had tested the claimant several times and written a typed report, and then he moved out of the area. The third doctor, Dr. Levin, is a psychiatrist in a mental health clinic in Hollywood, and she treated him at least four or five occasions prior to the time that the judge issued his decision. Now, where the judge made a mistake was he relied on the one-time consultative report by Dr. Colonna, and he never pointed out any independent clinical findings in Dr. Colonna's report that overcame the findings of the three long-time treating doctors. The rule that applies there is Orne versus Astru, which says that if the ALJ wants to reject treating doctors' findings in this kind of a situation, he has to compare the report of the one-time examiner with the reports of the treating doctors and show where there's independent clinical findings that, you know, would prove his point of mild – And the other diagnoses made by the treating doctors were major depression, low mental intellectual functioning, and so on. But if I understand correctly, part of what concerned either the ALJ or the Appeals Council was that the treating physicians' conclusions weren't supported by the underlying tests, or the underlying tests and records like that were missing. And my question is – and I know you think, maybe correctly so, that they had a duty to try to develop the record and get those records. My question to you is, are those records, in fact, available? Do you know? Which doctor is it? Chauvinfield and Genoian. Chauvinfield, no. His records – I tried to find him, couldn't locate him. And what about Dr. Genoian's? Genoian provided over 100 pages of records, both monthly or whatever, treating records, handwritten. Some were typed up. He did provide a five- or six-page typed-up report, which covers – summarizes his treatment over the year. Everything that he's relied on, all the tests that he based his opinion on, has that already been furnished? Is there anything that we would remand it for to go get some more records, or is that all – is it the whole package? With respect to Dr. Genoian, I think the records he provided were more than ample and complete in every respect. Nothing else that the ALJ would need? Well, the judge was critical of the records – of every treating doctor for furnished records. But he never made any effort to say, I want to recontact these doctors and get more. There's no question. Counsel, I think the question is, if the doctors were recontacted, are there more tests or records that exist than they could provide? Even though you think there's enough now, is there more out there that theoretically could come in if they were recontacted? Let me respond this way. Dr. Genoian could have provided anything that the ALJ wanted. He's always been available. He's employed by the county. He does this regularly. And he's the doctor that, to this day, he's treated this patient about nine years. Now, Dr. Taubenfeld could not be located, so he could not provide anything. However, if he wanted to contact the Hollywood Mental Health Clinic, Dr. Levin, she would have provided whatever information the judge wanted. Again, these are county doctors. You don't know whether or not there are additional records to be obtained. Is that correct? I'm sorry? You do not know whether or not there are additional records to be obtained that would support your client's case? Additional records can be obtained from Hollywood Mental Health. That's Dr. Levin and Dr. Genoian. I say Dr. Taubenfeld. We don't know his whereabouts. So two out of three of those physicians, there is more evidence out there. One of them there isn't unless you now locate the doctor. Is that a fair summary? You're talking about the present time. When the judge issued his decision, you know, some years back, he alleged vagueness, incompleteness. He couldn't understand anything, so he should have followed up and at that time secured records. Subsequently, the claimant had filed for a second application of disability, and he was found disabled. But the judge should have timely followed up in alleging vagueness, incompleteness, his inability to understand the doctor's records. I'm not asking my question well. What I'm trying to get at is suppose we remand the case to the ALJ with directions to get the records. Is this a futile thing because he's already gotten the records? Is it a futile thing because the records no longer exist? The records, as they became available, I furnished them, including some that were sent to the appeals council in Fosters, Virginia, periodically. And that was brought up to date based on keeping the record complete. I did that. The judge did nothing. I take it there's no point in remanding it for him to get more records because you've already given him all the records. Is that what you're saying? I think the record is complete. Okay. Fair enough. Did you want to reserve your time? Yes, I'll reserve my time. Thank you. Good morning, Your Honors. I'm Gerilyn Gullseth, appearing for the Commissioner of Social Security. I just wanted to make a couple of points. The claimant persists in arguing that Dr. Colonna's report did not constitute substantial evidence, but it was based on independent clinical findings that differed from Dr. Taubenfeld's, which the district court also discussed. And in terms of the record, with respect to Dr. Janowian, we agree that there were a lot of progress notes that were provided. But the progress notes and the picture that Dr. Janowian sort of painted of the claimant in his June 2005 letter don't match. But let me ask you, I'm still a little confused about the state of the record. One of the things, for example, that the ALJ found was missing was a CT scan that Dr. Janowian referred to, but that wasn't in the material that was provided at the time. Does it exist? In other words, I guess I'm asking the same question that we were asking opposing counsel. If the ALJ was faced with a situation in which the physician said, I'm basing my opinion on a number of tests, including A, B, and C, and, you know, number C is not in the record, shouldn't the ALJ have asked for it, and does it exist? Can it be obtained? Well, of course, I have a number of responses to your question. First of all, a claimant who was represented by counsel had the burden to, you know, to furnish that evidence. In addition, I think the CT scan … When the ALJ knows that there's an ambiguity and that there's something out there, there is an obligation to pursue it, isn't there? There is a … Certainly the ALJ shares a burden in developing the record, but I don't believe, although a claimant pointed out in his reply brief to this court that he raised the issue at the administrative level, I don't believe he raised the duty to develop issue to the district court, and he has yet to point out where he raised the issue. So it's the commissioner's position that that issue is waived. But with respect to that particular CT scan that was in Dr. … or referred to in Dr. Janowian's letter, I would point out that the time period that is at issue here is from July 2005, when the claimant applied for SSI benefits, to the November 2006 ALJ decision. So the most probative, relevant evidence, obviously, is going to be contemporaneous evidence during that time period. The CT scan that he cites, I believe, was in February of 2002 and revealed mild atrophy. So if the claimant thought that a CT scan findings from over three years before the SSI filing date was, you know, relevant to the period at issue, it would have behooved him to submit it. That kind of begs the question. My question was whether it exists, and apparently you're saying, sure, it exists. It's just … Well, I don't know that, Your Honor. I don't know if it exists. It's referred to in … Why wouldn't a brain scan that predated the period at issue be relevant? Do brains grow back the way … If there's brain atrophy, does it grow back the way a bone heals or something? I mean, I could understand it if it was the flip side. We were only dealing up to 2007, and this was much later, so it doesn't pertain. But I don't really understand the counterargument. Well, you're asking me why it would not be relevant? Right. You seem to say it's not relevant because it was before the period at issue. Well, first of all, we don't know whether it exists, but even if it does, and we accept that there were mild findings of atrophy, the ALJ had all this other contemporaneous evidence available to him about the claimant's functioning. Dr. Janowian's treatment notes, which were, you know, showed that he was healthy, basically. I mean, most of the findings were normal. He was just on a routine of medications. We have Dr. Colonis' November 2005 testing, which was right smack in the middle of the period at issue. Certainly diagnostic test findings are, you know, are relevant, but the ALJ and the commissioner in deciding disability look at the clinical manifestations, that is, you know, how the person actually tests during the, you know, doctor's visit. You know, it struck me in looking at this that the ALJ, at least in some respects, made factual errors that seemed very apparent. For example, saying there's only one back X-ray when there were two back X-rays, relying on the idea that there had been no mental health treatment sought after June of 2006 when the record is clear that there was. There are just a whole series of factual errors that are unassailable in my view. So what should we do about that? Well, first, naturally, I disagree that there are errors that are harmful errors. I think the Appeals Council adequately addressed those additional mental health treatment notes from Dr. Levin. The issue here is whether these treating source opinions were supported by the evidence of record. And when you compare Dr. Janowian's, you know, dire picture of the claimant in his June 2005 letter, it simply doesn't match the progress notes. Nor does Dr. Levin's January 2007 opinion match her progress notes, which again are fairly cursory in showing that the mental status findings were fairly intact. As for Dr. Tabenfeld, the claimant testified that he hadn't seen him for a couple of years at the time of the hearing in November 2006. And what we do have is Dr. Colonna's findings and Dr. Enriquez's findings from November 2005, which directly conflict with the treating source findings. The Appeals Council dealt with this in 2007, if I'm remembering correctly. Does that sound right? Let me check, Your Honor. April 2007. The 27th, 2007, was there? Yes, correct. Now, he subsequently filed a disability claim, is that correct, that was subsequently approved? I believe so, yes. The claimant represented that, yes. You don't know whether it's true or not? I do not know whether that's true. But I believe that the period that he, excuse me for a moment. I think the period that he said he was found disabled was January 2009, which was more than, well, two years after the ALJ decision here. And certainly we don't, you know, know what that finding was based on. I just want to make sure I have a handle on what we're talking about, at best back benefits for a certain period of time, because now taking counsel's representation is true. He's already drawing disability from 2007 forward? It would be 2009 forward, yes. So we're talking about a July 2005 SSI application. There are no retroactive benefits on an SSI application, so any benefits would begin July 2005, assuming all the other eligibility factors were met. But in terms of with respect to Judge Graper's noting errors that the claimant, or that the ALJ purportedly made, I would say that these, he may have misstated in terms of Dr. Levin's treatment, but again the appeals counsel evaluated those treatment notes and found that her opinion was unsupported. I mean, there's no dispute here that Dr. Levin and Dr. Janowian treated the claimant. They were treating physicians, but that doesn't end the issue, doesn't end the inquiry. The next issue is whether their opinions are supported by contemporaneous progress notes, findings, and what we have here simply doesn't satisfy that question. Again, Dr. Colonna's, as the district court recognized, Dr. Colonna's findings were directly conflicting with Dr. Taubenfeld. Dr. Taubenfeld believed that the claimant suffered from a memory impairment. Dr. Colonna found that his memory was intact and maybe slightly impaired. Finish your sentence, if you will. She felt that the claimant wasn't putting forth a full effort on his exam. Just to sum up, Your Honors, the claimant may disagree with what the ALJ found, but the ALJ's findings simply need be supported by substantial evidence, and he did rationally interpret the evidence in this case. Thank you. Thank you. You've got about a minute left. The ALJ misunderstood the meaning of giddiness. He gave the definition that is commonly used in conversation and understanding, but giddiness has a specific meaning in the medical dictionary. It means one thing, dizziness. When the hearing was going on, the judge questioned the claimant, telling him that giddiness meant being euphoric, generally upbeat, and happy on occasion. And he had this in his mind that the treating doctor, Dr. Genoyan, had reported this over a period of years, and so this made the judge think, well, this man can't be very depressed if his treating doctor over a period of years says he has giddiness. Unfortunately, from that discussion, the judge then went to asking the claimant about his pain. And the claimant, using an interpreter, I don't know if the translation came through very clearly, but he talked about on two or three occasions a month that he has these feelings where he's afraid of falling, so he lies down to rest, and that's when he has, he called it the worst pain, and then another instance was called severe pain. This judge did not find that the claimant had any pain. In his findings of fact, he omits any finding regarding pain or the dizziness. He completely misunderstood, and not only misunderstood, he twisted what the claimant was trying to tell him into saying that, well, he just doesn't feel so good on those two or three occasions a month, and he dismissed the whole thing, completely misunderstanding the severe dizziness, et cetera. Thank you, Mr. Hale. Thank you. Well, Seth, thank you. The case has started. You're dismissed.
judges: Scullin, Silverman, Graber